**REX CHAINBELT, INC., a Wisconsin corporation, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 72–1446.**

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1973.

Decided Aug. 3, 1973.

David J. Cannon, U. S. Atty., Milwaukee, Wis., Scott P. Crampton, Asst. Atty. Gen., William M. Brown, Jr., Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Andrew O. Riteris, George A. Evans, Milwaukee, Wis., for plaintiff-appellee.

Before CLARK, Associate Justice,* and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

This is an appeal by the United States from the judgment of the district court in favor of taxpayer, Rex Chainbelt, Inc. That company had filed suit for a refund on an excise tax paid for the years 1961 through 1966 on an item which the Government contends is an accessory or part of an automotive truck chassis and therefore is subject to an 8% tax under Section 4061(b) of the Internal Revenue Code of 1954.

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

**652**

Rex Chainbelt manufactures concrete mixers designed to be attached to the chassis of a truck and to be powered by its engine. The mixer's drum is connected to the exposed front end of the truck engine's crankshaft by a drive train which transmits the engine power to the drum and sequentially reduces the engine speed to provide a drum rotation at a speed suitable for concrete mixing. The mechanical drive train consists of chain and sprocket, final reduction drive, mixer transmission, universal joints, drive line, and transfer case.

The mixer is sold as a unit, including all of the above mentioned drive train elements. Customers attach the mixer to a taxable chassis which they purchase from a truck manufacturer.

"The parties agree that [for the taxable years in question] the mixer is exempt from excise taxes up to the transfer case and that the chassis to which the mixer is attached is taxable up to the [same] transfer case." The disagreement occurs on the taxability of the transfer case.[1]

The district court held that the transfer case was not an automotive part or accessory subject to excise taxes under 26 U.S.C. § 4061(b) and that if it was to be considered an automotive part or accessory within the meaning of that section of the Code, it was nevertheless exempt from taxation by virtue of 26 U.S.C. § 4218(c).[2] The district court's

findings of fact and conclusions of law are unofficially reported at (CCH) 72–1 U.S.Tax Cas. ¶ 16,029.

Treasury Regulations on Manufacturers and Retailers Excise Tax, Section 48.4061(b)–2(a), defines the term "parts or accessories," in part, as follows:

(a) In general. The term "parts or accessories" includes (1) any article the primary use of which is to improve, repair, replace, or serve as a component part of an automobile truck or bus chassis or body, or other automobile chassis or body, or taxable tractor, (2) any article designed to be attached to or used in connection with such chassis, body, or tractor to add to its utility or ornamentation, and (3) any article the primary use of which is in connection with such chassis, body, or tractor, whether or not essential to its operation or use. The term "parts or accessories" includes all articles which have reached such a stage of manufacture as to be commonly known as parts or accessories whether or not fitting operations are required in connection with their installation. An article shall not be deemed to be a taxable part or accessory even though it is designed to be attached to the vehicle or to be primarily used in connection therewith if the article is in effect the load being transported and the primary function of the article is

1. Originally, Rev.Rule 56–479, 1956–2 Cum. Bull. 796, held that concrete mixers were not subject to the excise tax on truck bodies (Code Section 4061(a)(1)) since they are primarily designed and adapted for mixing concrete rather than as truck bodies. The automobile truck chassis on which the mixer is mounted, however, was ruled subject to the tax. Rev.Rule 67–282, 1967–2 Cum.Bull. 363, revoked the earlier ruling on the grounds that concrete mixers are primarily designed and adapted for the transportation of concrete and held that concrete mixers were subject to the excise tax effective July 1, 1968 (for years subsequent to the years in issue here). The Tax Reform Act of 1969, P.L. 91–172, amended Section 4063 of the 1954 Code by adding paragraph (a)(5), exempting from

the excise tax truck-mounted concrete mixers and parts or accessories designed primarily for use on or in connection with concrete mixers sold after December 31, 1969. Accordingly, the Internal Revenue Service has ruled that transfer cases are within the statutory exception for years subsequent to December 31, 1969.

2. "If any person manufactures, produces, or imports a part or accessory taxable under section 4061(b), . . . and uses it (otherwise than as material in the manufacture or production of, or as a component part of, any other article to be manufactured or produced by him), then he shall be liable for tax under this chapter in the same manner as if such article were sold by him." (Effective 1958)

to serve a purpose unrelated to the vehicle as such. For example, a construction derrick attached to a truck is not a taxable part or accessory inasmuch as the derrick is the load of the truck and its use is in connection with construction work at a construction site rather than in connection with the transportation or loading or unloading function of the truck. On the other hand, an article such as a towing cradle or loading or unloading equipment designed to be attached to or to be primarily used in connection with a truck is a taxable part or accessory inasmuch as the article contributes to the load-carrying function of the truck.

In Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L. Ed. 1051 (1930), precursory, equivalent regulations were approved by the Court.

In attempting to support the district court's determination that the transfer case was not a part or an accessory, Rex Chainbelt, while conceding that the case was designed to be attached to and used with the chassis and was in fact so attached and used, argues that it was a part of the exempt "load" within the meaning of the regulation and if it was not, it still did not add utility to the chassis.

While we might find some merit in the contention that the primary use of the transfer case was in connection with the functioning of the exempt mixer, it would seem that an equally strong argument could be made to the effect that primacy was to be found in the connection with the chassis and particularly the motor thereof. It would be difficult in our opinion to say that the attachment did not add utility to the chassis.

While querying the correctness of the first prong of the district court's decision, we do not deem it necessary to make a firm determination as it appears clear to us that the exemption from tax provided by Section 4218(c) is applicable to the transfer cases in issue.

The district court's findings of fact included a finding that the transfer case was a component part of the exempt mixer. We do not find this crucial determination within the exempt phrasing of Section 4218(c) to be erroneous. The record fairly reflects, *inter alia,* the following supportive facts. The designs of the case and of the entire drive train are governed by the design of the mixer drum, which differs from manufacturer to manufacturer. A transfer case is not sold except together with a mixer other than as a replacement part for the mixer for which it was designed. Mixers of one manufacturer are not sold for use with transfer cases of another manufacturer. The transfer case is included in the gross weight of the mixer. In the absence of the mixer it could serve no utility purpose when attached to the truck chassis. (The Government appears to be typifying the transfer case as a power take off, a characterization that we find unsupported.) There were other items which were treated in the industry as accessories, but basically the transfer case was treated as an integral part of the exempt mixer. The transfer case has no function except with the mixer for which it was designed.

The Government appears to be relying to a considerable extent on the fact that the transfer case is physically located at the extreme front end of the truck chassis while the mixer to which it is connected is toward the rear of the truck chassis. We do not consider this matter of geography to be a sufficient basis for faulting the district court's determination that factually the transfer case was a component part of the mixer mechanism.

For the reasons hereinbefore set out, the judgment of the district court is affirmed.

Affirmed.